■ In the Matter of JOSEPH J. BURNHAM, Appellant, v STATE OF NEW YORK INSURANCE DEPARTMENT et al., Respondents.—Judgment, Supreme Court, New York County, entered October 17, 1977, dismissing a petition in an article 78 proceeding to vacate respondent's determination denying petitioner a license as an independent insurance adjuster unanimously reversed, on the law, without costs and without disbursements, petition granted, and license directed to be issued. Petitioner applied for issuance of a license to act as an independent insurance adjuster pursuant to section 123 of the Insurance Law. The license sought would authorize petitioner to investigate and adjust claims made pursuant to various types of automobile insurance. For some years prior to his application, petitioner had performed that type of work on a part-time basis for two companies, both of which attested to his integrity and ability, and one of which offered him a full-time position contingent upon his securing the license in question. In his application, petitioner reported that he had been arrested twice on charges of sexual abuse involving male teenagers. On the first occasion, which occurred in 1968, petitioner had been charged with sexual abuse in the third degree, pleaded guilty to a reduced charge of disorderly conduct, and was sentenced to conditional discharge. On the second occasion, which occurred in 1972, petitioner was charged with sexual abuse in the second degree, pleaded guilty to a reduced charge of sexual abuse in the third degree, a class B misdemeanor, and was sentenced to probation for a term of one year, with psychotherapy to continue. He was discharged from probation on March 1, 1974 after more than a year of psychiatric support. On August 5, 1976, petitioner appeared at the department's office in connection with the investigation of his application and furnished the examiner a written explanation of the circumstances surrounding the above charges. In a letter addressed to the examiner, prepared prior to his arrival in the office, petitioner acknowledged his guilt in connection with the 1968 event and repeated the facts of its disposition. As to the 1972 arrest, he reported that he was accused of sexual abuse and pleaded guilty as indicated above on the advice of his attorney. The examiner requested him to prepare at that time a more detailed account of the events in connection with his arrests. In this account, he reported with regard to the 1968 episode that he had made a "physical gesture" which was described as "fondling a teen age boy" and acknowledged that he had placed his hand on the pants of the boy. As to the 1972 episode, he in substance stated that in connection with some electrical work he was doing with the assistance of some neighborhood boys, he had "grapped one of the kids by the belt" to maintain his balance. It is a fair inference that as to the second episode he denied any culpability and stated that he had pleaded guilty on his counsel's advice that it would be "the best way to resolve the problem." On September 29, 1976, the examiner prepared a report, describing the results of his investigation, in which he detailed the

events concerning the two arrests in a manner totally consistent with the petitioner's version. Nonetheless, "Based upon Mr. Burnham's arrest record and the nature of the license applied for" he recommended denial of the application. By letter dated October 14, 1976, the respondent informed petitioner that "Disapproval of your application has been recommended by the examiner on the grounds that you have demonstrated incompetency and/or untrustworthiness to act as an insurance adjuster within the meaning and intent of the Insurance Law." In response to petitioner's request for a hearing to determine whether denial of his application should be made final, he was served with a notice of hearing containing two specifications. The specifications briefly describe the undisputed facts that he had been arrested on the charges described above and the nature of the dispositions. The notice contained no allusion whatever to the statements that the petitioner had submitted to the examiner, and at the hearing which took place on January 27, 1977, the examiner confirmed that he had recommended denial solely because of the nature of the two arrests. The only reference to the petitioner's written statements occurred in a colloquy between the hearing officer and counsel toward the end of the hearing. On March 22, 1977 the hearing officer filed findings of fact, conclusion and decision, approved the following day by the Superintendent of Insurance, which denied the application. In that document the hearing officer stated that the written explanation given by petitioner of the two arrests denied guilt as to both incidents and went on to conclude that notwithstanding petitioner's convictions, he "saw fit to misrepresent to the Department's examiner the nature of those episodes and [his] culpability in regard thereto. That lack of candor demonstrates his untrustworthiness to be licensed by this Department." Significantly, the license was not denied on the basis of the two specifications in the notice of hearing. From this fact it may be inferred that respondent had concluded, correctly in our view, that the arrests in question would not be a basis for license denial under the provisions of sections 750 through 752 of the Correction Law, which had become effective on January 1, 1977, after the original recommendation of the examiner but prior to the mailing of the notice of hearing. Section 752, it should be noted, prohibits the denial of any license as a result of a prior conviction "of one or more criminal offenses, or by reason of a finding of lack of 'good moral character' when such finding is based upon the fact that the applicant has previously been convicted of one or more criminal offenses, unless: (1) there is a direct relationship between one or more of the previous criminal offenses and the specific license or employment sought; or (2) the issuance of the license * * * would involve an unreasonable risk to property or to the safety or welfare of specific individuals or the general public." No explanation has been presented as to why the respondent, aware of the written statements made by the petitioner prior to service of the notice of hearing, did not include as a specification the alleged misrepresentations contained therein, as would appear to have been its obligation under section 22 of the Insurance Law. That question need not be pursued here. Petitioner was denied the license on a finding of untrustworthiness based upon the conclusion that he had misrepresented the nature of the two episodes and his culpability in regard to them. Not one word in this record supports that finding. In fact the report of respondent's own examiner, describing the results of his investigation, presented an account of those episodes indistinguishable from that proffered by petitioner. In short, the conclusion that underlies respondent's determination lacks any evidentiary support. Accordingly, it is unnecessary to consider whether a "lack of

candor" by petitioner, if there had been such, when asked to detail for a public agency events of the most intimate, painful and emotion-laden kind would provide a rational basis for the judgment that he could not discharge his duties as an insurance adjuster in a trustworthy manner in the face of the impressive uncontradicted evidence that he had been performing just such duties for some time with integrity and competence. Concur—Evans, J. P., Markewich, Lynch and Sandler, JJ.